# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00214-CV

**Lu Ann Nye, Appellant**

**v.**

**Millicent Buntin, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
### NO. 00-555-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Lu Ann Nye appeals from a judgment awarding her $250 for lost earnings in connection with personal injuries arising from an automobile collision. She complains (1) that the district court erred by failing to admit her medical cost affidavits into evidence, and (2) that the jury's damage award of only $250 was not supported by legally or factually sufficient evidence and was manifestly unjust. We affirm.

At about 7 a.m. on November 11, 1998, Nye's pickup was rear-ended by a sport-utility vehicle driven by Millicent Buntin. The parties differed on the relative movement of the vehicles at the time of the collision. Nye testified that she was stopped as the fourth or fifth in a line of cars waiting at a stoplight when she was hit. Buntin testified that the cars were traveling at least forty-five miles per hour when Nye braked unexpectedly. The police report reflected that the accident occurred two-tenths of a mile from the intersection. Buntin testified that her brakes worked

at first, but then failed. Her front bumper went under the rear bumper of Nye's pickup. After the collision, the bed of the pickup remained about two inches displaced from its previous alignment. Nye's pickup was driven away from the accident.

Nye testified that the force of the collision caused her to hit her head on the back of the pickup cab (six to eight inches from her normal driving position), leaving a knot on her head. She missed a day of work, which cost her $226. Nye testified that she had severe headaches for about ten months that affected her thinking. She claimed she also had pain in her neck, shoulders and upper back, lower back, right hip, and right knee.

There was evidence of other pain-inducing incidents in Nye's life. She had been sideswiped on an icy freeway in 1994, and claimed many of the same types of injuries she claims in this case. She testified that she believed that the 1994 injuries made her more susceptible to muscle injuries. Buntin presented evidence that Nye was receiving treatment for pain in 1994 and 1995 and that, in 1996, Nye had tests for pain in her lower back and right hip and leg. Nye pulled muscles in her back when moving her belongings to a new house in 1997. Buntin also presented evidence that, in 1997, Nye sought treatment for a twisted right knee and a broken elbow. Nye testified that, by 1998, she was mostly pain-free from the 1994 injuries, although she occasionally pulled muscles that she treated by taking pain medication. Other evidence showed Nye reported chronic lower back pain at an examination in April 1998, and that she sought pain medication for a pinched nerve in her back on November 2, 1998—nine days before the collision with Buntin. After the accident, she twice injured muscles in her back while moving patients as part of her job as an x-ray technician.

2

Nye testified regarding the impact of injuries from the collision on her life. She was unable to do simple household chores for months after the accident. She did not make as much money from her cleaning business (which she had in addition to her x-ray technician work) because she had to hire outside workers. She missed attending many of her daughter's activities during her senior year of 1998-99. Nye's daughter testified that Nye cried a lot from the pain and depression and that unpaid medical bills caused collectors to harass them. The collective pressure strained their previously close relationship.

Nye testified that she still suffers some from the injuries she incurred in the wreck. She testified that her right hip and knee bother her. She also testified that she paid a chiropractor $3000 for treatments and paid $2452 for an electrical pain relief device, massage therapy, and the installation of a jacuzzi tub that she uses twice a day to relieve stiffness and aches. Nye attempted to introduce cost affidavits reflecting $14,562.92 in medical costs associated with treatment for her complaints pursuant to Texas Civil Practice and Remedies Code Annotated section 18.001 (West 1997). However, Nye failed to serve these affidavits timely under section 18.001(d) and the trial court did not admit them into evidence. *See id*. § 18.001(d).

The jury found that Buntin's negligence caused the accident and awarded Nye $250 for lost income. The jury found that Nye suffered no damage for future lost income or for past and future physical pain, mental anguish, physical impairment, and medical care.

Although Nye has several points on appeal, her complaints are two-fold. She complains that the medical cost affidavits excluded by the trial court because they were not timely served on Buntin should have been admitted because the lateness was harmless. She also contends

3

that the evidence is legally and factually insufficient to support the jury's failure to find that she suffered damages beyond $250, resulting in an unjust verdict.

We review a trial court's decision on the admission of evidence for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 652 (Tex. App.—Austin 2005, pet. denied). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex.1995). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Malone*, 972 S.W.2d at 43 (citing *State Bar of Texas v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989)). We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *Id.*; Tex. R. App. P. 44.1(a).

Nye's medical cost affidavits were excluded because they were served on Buntin after the statutory deadline. Civil practice and remedies code section 18.001(d) requires that "[t]he party offering the affidavit in evidence or the party's attorney must file the affidavit with the clerk of the court and serve a copy of the affidavit on each other party to the case at least 30 days before the day on which evidence is first presented at the trial of the case." Tex. Civ. Prac. & Rem. Code Ann. § 18.001(d). Although Nye filed her affidavits with the clerk's office on August 27, 2004 (more than thirty days before trial), she did not serve them on Buntin until September 7, 2004 (within thirty days of trial). After receiving the cost affidavits on September 7, Buntin filed and served an affidavit controverting Nye's cost affidavits on September 13, 2004. Evidence was first presented at trial on

4

September 28, 2004. Nye concedes that she did not meet the statutory deadline for service under section 18.001(d). *See id.*

In points of error two and eleven, Nye argues that the trial court should not have excluded the cost affidavits because the purpose of the statute's thirty-day service deadline was served. She contends that the purpose is to give the defendant an adequate opportunity to respond before trial. Because Buntin filed an affidavit controverting the cost affidavits on September 13, 2004—actually within the statutory timeframe for such responsive affidavits—Nye contends that her tardiness in serving the cost affidavits did not harm Buntin. Nye also contends that Buntin's timely filing and service of the controverting affidavit constituted a waiver of the right to challenge the admissibility of the cost affidavits on timeliness grounds. Accordingly, Nye argues, the district court erred by excluding her affidavits.

The district court did not abuse its discretion by excluding the cost affidavits. The Legislature set out the deadline for service of cost affidavits in mandatory language. *See id.* While exclusion is not expressly the only potential consequence of noncompliance, it is a reasonable sanction because of the requirement that an affidavit "must" be served timely. The fact that Buntin's controverting affidavit was timely filed does not cure the untimeliness of the service of Nye's affidavits. Nor does the fact that the controverting affidavit was filed prove that Buntin was not harmed by the late service of Nye's cost affidavits. We find no support for the proposition that the timely filing of controverting affidavits waives the right to contest the admission of untimely filed cost affidavits. The trial court did not act without regard to guiding rules and principles in concluding that Nye's failure to comply with the statute rendered the affidavits inadmissible to prove

5

reasonableness and necessity. *See Rodriguez-Narrera v. Ridinger*, 19 S.W.3d 531, 533 (Tex. App.—Fort Worth 2000, no pet.). We overrule points two and eleven.

In point of error three, Nye contends that her cost affidavits should not have been excluded because the service was late due to the "virtual last-minute cancellation of the pretrial conference." While the cancellation of the pretrial conference may have thwarted her intended personal service of the documents at the hearing, neither Nye's brief nor the record explains why the cancellation of the pretrial conference delayed the service of documents by some other method for more than a week. The cancellation of the pretrial conference does not excuse the failure to comply with section 18.001(d). Therefore, it does not make the exclusion of the untimely cost affidavits an abuse of discretion. We overrule point three.

By points of error eight and nine, Nye argues that the district court erred by failing to reconsider and reverse the exclusion of the cost affidavits because Buntin's controverting affidavit proof was inadequate. By points of error ten and fourteen, she contends that the cost affidavits should have been admitted when it became clear that the evidence at trial was about to close without qualified proof rebutting her cost affidavits. Nye argues that the inadequacy of the controverting affidavit to rebut her unadmitted cost affidavits should result in the admission of her affidavits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(f) (West 1997). The rule, of course, cannot work this way. Neither the cost affidavits nor the controverting affidavit were admitted, so any inadequacies in the controverting affidavit are immaterial. Even if the mere mention of the controverting affidavit somehow affected the jury, any inadequacy of the controverting affidavit does not alter the tardy

6

service of the cost affidavits or the propriety of their exclusion and cause their admission to be mandatory. We overrule points eight, nine, ten, and fourteen.

By point of error seven, Nye reiterates her previous arguments concerning the exclusion of the cost affidavits and the inadequacy of the controverting affidavit and contends that the trial court erred by overruling her motion for mistrial based on those assertions. We review a trial court's denial of a mistrial under an abuse of discretion standard. *Lewis v. United Parcel Serv., Inc.*, 175 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Nye moved for a mistrial because she was not able to examine Dr. Bill Turpin, Buntin's affiant, in court. Dr. Turpin was designated as a witness in 2001 but never deposed. Buntin's counsel represented at trial without contradiction that Dr. Turpin was unable to attend the trial because he suffered a brain hemorrhage the day before he was to testify. Most critical to the merits of the motion, Dr. Turpin's controverting affidavit was not admitted into evidence. There was no error by the court to correct by declaring a mistrial. We overrule point seven.

By points of error twelve and thirteen, Nye contends that the trial court erred by not admitting the cost affidavits for the limited purpose of showing the genuineness of her pain and suffering and supporting the credibility of her complaints. An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Malone*, 972 S.W.2d at 43; *Evans*, 774 S.W.2d at 658 n.5. Even if Nye offered the affidavits for the limited purpose of bolstering her testimony, the affidavits are hearsay.[1] Nye's argument that the affidavits support the

---

[1] Section 18.001 makes such hearsay affidavits admissible if a litigant complies with its procedures. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (West 1997); *see also Beauchamp v. Hambrick*, 901 S.W.2d 747, 749 (Tex. App.—Eastland 1995, no writ). Absent compliance with the

credibility of evidence that she suffered because of this accident depends on the jury's acceptance of the truth of the statements that the treatments were reasonable and necessary. Thus, the affidavits are out-of-court statements offered for the truth of the matter asserted and are inadmissible. *See* Tex. R. Evid. 801(d), 802. There is no showing that the cost affidavits are admissible despite their hearsay nature aside from their use as cost affidavits under section 18.001. The district court did not err by excluding them from evidence as support for Nye's testimony about her pain and suffering. We overrule points twelve and thirteen.

The overruling of these points requires that we overrule Nye's fourth point of error, by which she urges generally that excluding the cost affidavit proof, rendering judgment on the evidence admitted, and overruling her motion for new trial was error. There was no error in excluding the evidence. Therefore, rendering judgment without the cost affidavits as part of the record and overruling her motion for new trial based on the exclusion of the affidavits was not error.

By points of error five and six, Nye challenges the legal and factual sufficiency of the evidence to support the jury's verdict. She contends that the $250 award is against the great weight and preponderance of the evidence and manifestly wrong and unjust. She argues that the verdict that the $250 award is not supported by any evidence that she was *not* injured and damaged, and is instead contrary to the overwhelming weight of the evidence.

Parties attacking the legal sufficiency of an adverse finding on an issue on which they have the burden of proof must further demonstrate that the evidence conclusively established all vital

---

timeliness section 18.001(d), such affidavits are hearsay and must qualify under an exception to the hearsay rule to be admissible. *See* Tex. R. Evid. 801-04.

8

facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We examine the record for evidence supporting the finding that reasonable jurors could believe, disregarding all contrary evidence that reasonable jurors could ignore. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). If the proposition contrary to the verdict is established as a matter of law, we must render judgment for that proposition. *Dow*, 46 S.W.3d at 241.

If a jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, we must reverse the judgment. *See In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). A jury may not ignore undisputed facts and arbitrarily fix an amount of damages that is unfair or unjust. *Horton v. Denny's, Inc.*, 128 S.W.3d 256, 260 (Tex. App.—Tyler 2003, pet. denied). In reviewing a factual sufficiency point, we must consider all of the evidence in the record. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We cannot set aside a judgment on appeal merely because this Court would have weighed the evidence differently or reached another conclusion, but only if it is so against the great weight and preponderance of the evidence to be manifestly wrong and unjust. *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988).

Nye's contention that the collision caused her immediate and lasting injuries underlies her damage claims. She contends that the jury should have awarded her damages for past and future physical pain and mental anguish, physical impairment, and medical care. She claims that her pickup's bed was twisted by the force of the accident, demonstrating that a significant force hit her. She argues that, although she had suffered similar injuries before the collision at issue and took prescription pain medication intermittently, she was pain-free before the accident. She testified that,

9

within the day after the collision, she had a lump on her head from hitting it on the back window, tightness in her shoulders, and pain in her neck, lower back, right hip, and right knee. She testified that, for the next ten months, she had severe headaches that interfered with her ability to think. She eventually sought a neurologist's help in diagnosing the cause, but an MRI did not reveal a source for her pain. Some pain-killing drugs were ineffective. Others, taken by pill and injection, reduced the pain but did not eliminate it. She used an electrical pain control device. By the time of trial, some six years after the collision, she testified that, although she was mostly recovered, she still had joint and back pain and tight shoulder muscles.

Buntin contends that sufficient evidence supports the jury's refusal to award damages. She relies on evidence from the scene, Nye's previous and subsequent injuries, and the subjective nature of the evidence supporting Nye's claim. She points out that Nye did not report injuries at the scene and was not transported by emergency services to a hospital. She refers to the police report of minimal damage to the vehicles and the fact that Nye's truck was driven, not towed, from the scene. Buntin relies on Nye's testimony about her pre-collision pain and impairment in the areas she complains were injured in the collision with Buntin—especially the complaints of pain and impairment arising from the 1994 collision. Buntin presented testimony and evidence from doctors who treated Nye for similar injuries suffered in the 1994 collision. Buntin also refers to Nye's admission of post-accident injuries arising from other sources.

While a jury cannot ignore objective evidence of injury, it may reject subjective claims of pain. *Gonzalez v. Wal-Mart Stores, Inc.*, 143 S.W.3d 118, 123 (Tex. App.—San Antonio

10

2004, no pet.). The jury may also weigh testimony regarding previous or subsequent injury and its effect on the complaining party. *Id.*

The jury had ample testimony from Nye regarding the pain she suffered both before and after the accident. The jury received substantial evidence of previous and subsequent injuries. In reaching a verdict awarding nothing on these measures of damages, the jury made credibility determinations that we cannot look behind or overturn. There is no showing that the jury was biased or prejudiced. The record contains more than a scintilla of evidence favoring the verdict. The verdict is not against the great weight and preponderance of the evidence. We overrule points of error five and six.

By her remaining points of error, Nye contends that the errors asserted in her brief independently and cumulatively require the reversal of this judgment. Having found no error when considering Nye's other points of error, we overrule Nye's points of error one and fifteen.

We affirm the judgment.


_____

G. Alan Waldrop, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed: August 11, 2006

11