**Opinion issued July 30, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-22-00563-CV**

————————————

**LESLIE GARZA, Appellant**

**V.**

**LELIA H. RODGERS, Appellee**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-01673**

---

**MEMORANDUM OPINION**

This is a restricted appeal from a default judgment in favor of appellee Lelia H. Rodgers. In a single issue, appellant, Leslie Garza, challenges the trial court's default judgment on the basis that the evidence does not support the trial court's award of damages. We affirm in part and reverse and remand in part.

## Background

On the morning of her sixty-third birthday, Rodgers was riding her bicycle in preparation for an upcoming cycling event. Rodgers estimates that she was biking at a pace of sixteen to eighteen miles per hour when an unrestrained dog began chasing her and lunged into her rear tire, causing her to fall and suffer personal injuries and damages. Rodgers filed suit against Garza and Russell Kade Till,[1] who she alleged were the dog's owners or those who harbored, sheltered, kept, controlled, managed, or possessed the dog as defined by the applicable city ordinance. Rodgers sued Garza and Till for negligence and gross negligence and sought an unspecified amount of damages for the following: medical expenses, disfigurement, loss of earnings and earning capacity, physical pain and suffering, mental anguish, and physical impairment.

Though Garza was personally served with process, she failed to answer or otherwise appear in response to Rodgers's lawsuit. Rodgers then filed a motion for entry of default judgment in the amount of $500,000. In the motion, Rodgers identified $9,154.81 in medical expenses. Rodgers's exhibits to the motion included the following: medical records and bills for Rodgers's post-accident treatment; records of the 911 call on the date of the accident; and Rodgers's typed statement detailing the accident, her injuries, expenses and damages, and current condition.

---

[1]    Till is not a party to this appeal.

The trial court conducted a hearing on the motion for entry of default judgment on November 8, 2021. At the hearing, the court heard testimony from Rodgers, who again described her accident, injuries, treatment, and recovery, as well as the loss of earnings she suffered as a restaurant and bar owner. Rodgers stated that her medical bills totaled $18,301.00 and that she lost between $25,000 and $26,000 as a result of not paying herself a salary for three months while she recovered. At the conclusion of the hearing, the trial court noted that it would "have no problem with a final judgment in the amount of $500,000 based on the testimony."

On February 9, 2022, the trial court signed a judgment for Rodgers against Garza (and Till) in the amount of $500,000. The judgment did not itemize Rodgers's damages or otherwise indicate how the court arrived at the $500,000 total. Thereafter, Garza filed a restricted appeal on July 27, 2022.

## Restricted Appeal

To prevail on a restricted appeal, an appellant must show that: (1) she filed notice of the restricted appeal within six months after the signing of the default judgment; (2) she was a party to the underlying lawsuit; (3) she did not participate in the hearing that resulted in the default judgment, and did not timely file any post-judgment motions or requests for finding of fact or conclusions of law; and (4) error is apparent on the face of the record. TEX. R. APP. P. 26.1(c); *Ins. Co. of Pa. v.*

3

*Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009) (per curiam). The first three elements are necessary to confer jurisdiction; the fourth is not. *Ex parte E.H.*, 602 S.W.3d 486, 497 (Tex. 2020). Here, the parties do not dispute satisfaction of the first three elements. Thus, we have jurisdiction over Garza's restricted appeal.

## Sufficiency of the Evidence of Damages

On appeal, Garza argues that the trial court's award of $500,000 is unsupported by the evidence.[2] Garza questions the evidence of Rodgers's economic damages, (totaling, according to Garza, $45,422.92), and argues that Rodgers presented no evidence of the remaining $454,577.04 presumably awarded for noneconomic damages.

### A.   Standard of Review

When a default judgment on a claim for unliquidated damages is entered, all factual allegations in the petition are deemed admitted except for the amount of damages. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992) (citing *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984)). Before awarding unliquidated damages in a default judgment, a trial court must hear evidence of those damages. TEX. R. CIV. P. 243; *Heine*, 835 S.W.2d at 83. A plaintiff in a default judgment must prove a "causal nexus" between the event made the basis

---

[2]   Garza does not specify whether she challenges the legal or factual sufficiency of the evidence.

of the suit and her injuries. *Morgan*, 675 S.W.2d at 732. "Proving that the event sued upon caused the plaintiff's injuries is part and parcel of proving the amount of damages to which the plaintiff is entitled." *Id.*

If no findings of fact or conclusions of law are filed or requested in a bench trial, we assume that the trial court made all findings necessary to support the judgment, but when the appellate record includes a reporter's record, these implied findings may be challenged for legal or factual sufficiency. *Heine*, 835 S.W.2d at 83–84.

This Court may sustain a legal sufficiency, or no-evidence point, only if the record reveals one of the following: (1) a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively proved the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

In deciding a legal sufficiency challenge, we consider only the evidence and inferences which, when viewed in the light most favorable to the judgment, tend to support the judgment; we disregard all evidence and inferences to the contrary. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981) (per curiam). In determining a factual sufficiency challenge, we consider all of the evidence in order to determine if the evidence supporting the finding is so weak or the evidence to the

5

contrary so overwhelming that the judgment should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

**B.  Analysis of Damages**

Though not clearly delineated on appeal, Rodgers appears to challenge the evidence supporting the following categories of damages: (1) medical expenses; (2) lost wages; and (3) noneconomic damages such as past and future pain, mental anguish, and physical impairment. We address each of these in turn.

**1.  Medical Expenses**

In her motion for entry of default judgment, Rodgers outlined medical expenses totaling $9,154.81. This figure reflects the amounts owed by Rodgers as demonstrated by the bills received by Rodgers and attached to the motion. At the hearing, Rodgers's counsel advised the court that the "total medicals" were $18,301. The charges reflected in those bills total $30,396.94.[3] At the default judgment hearing, the trial court stated the following with respect to Rodgers's medicals:

> And really, the medical bills are all proved up, so we don't even need to go through those. We don't need to go over the amounts. I've got it. I just need sort of the rest of the story so you can substantiate that line, whatever you want me to write in.

We disagree with the trial court's assertion that the medical bills were "all proved up." To the contrary, a claim for medical expenses must be supported by evidence

---

[3]  These figures differ from those contested by Garza on appeal.

6

that the expenses were reasonably necessary for the plaintiff to incur as a result of her injuries. *Jackson v. Gutierrez*, 77 S.W.3d 898, 902 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Rodriguez-Narrea v. Ridinger*, 19 S.W. 3d 531, 532 (Tex. App.—Fort Worth 2000, no pet.)). Proof of amounts charged or paid does not establish reasonableness. *Id.* Further, evidence that medical expenses are reasonable and customary is no evidence those medical expenses were reasonably necessary. *Id.* (citing *Rivas v. Garibay*, 974 S.W.2d 93, 96 (Tex. App.—San Antonio 1988, pet. denied)); *see also Transp. Concepts, Inc. v. Reeves*, 748 S.W.2d 302, 305 (Tex. App.—Dallas 1988, no pet.) (holding evidence legally insufficient to support damages award for medical expenses where plaintiff presented no evidence that expenses were reasonably necessary); *Warren v. Zamarron*, No. 03-03-00620-CV, 2005 WL 1038822, at *4 (Tex. App.—Austin May 5, 2005, no pet.) (mem. op. on reh'g) (citing *Jackson* and holding that proof of amounts plaintiff actually paid in medical expenses through admission of medical records and bills did not establish that expenses were necessary).

A plaintiff can demonstrate that her medical expenses are reasonable or necessary in two ways: (1) by presenting expert testimony or (2) by submitting affidavits in compliance with section 18.001 of the Texas Civil Practice and Remedies Code. *Jackson*, 77 S.W.3d at 902 (citing Tex. Civ. Prac. & Rem. Code § 18.001; *Rodriguez-Narrea*, 19 S.W.3d at 532). Here, however, Rodgers failed to

make either showing. Therefore, there was no evidence of the necessity or reasonableness of her medical expenses. "The fact that the testimony was adduced in a default judgment hearing does not relieve appellee of her burden to prove the reasonableness and necessity of her medical expenses." *Jackson*, 77 S.W.3d at 903. Because Rodgers failed to present evidence that her medical expenses were reasonable and necessary, we reverse the portion of the trial court's judgment awarding damages for medical expenses (if any).

### 2. Lost Wages

Garza also complains that though Rodgers testified to and requested $25,000 in lost wages, Rodgers "offered no proof of what [she] actually earned, nor tax returns, nor bank records, nor any other financial evidence to support [her] request for $25,000 in lost wages."

We disagree with Garza that Rodgers needed documentary evidence in addition to her testimony to support her claim for lost wages. At the default judgment hearing, Rodgers testified that she owns a restaurant and bar in the Houston area and that her business suffered when she had to step away from day-to-day operations as a result of the accident. She testified that she did not pay herself a salary for three months following the accident. Rodgers testified that she previously made $2,500 per week, or $10,000 per month, so her lost wages were "about $25,000 for three months." Texas courts have upheld default judgment awards for lost wages based on

similar testimony. *See Jackson*, 77 S.W.3d at 904 (affirming trial court's judgment as to lost wages where appellant "testified she missed 30 days of work 'as a result' of the accident" and "quantified the amount of wages she would have received during those days she did not work"); *Reeves*, 748 S.W.2d at 305 (finding "some evidence" to support award for lost wages where plaintiff testified as to amount of time off work and amount of wages lost during that time).

Unfortunately for Rodgers, however, the trial court's damages award does not specify the amount awarded for lost wages. Rather, the court awarded $500,000 without further clarification of the breakdown of that amount, and the judgment makes no mention of lost wages (or any other category of damages). For that reason, we must remand this matter to the trial court for a new trial on the issue of damages. *See Jackson*, 77 S.W.3d at 903–04 (reversing trial court's award for both mental anguish and pain and suffering where record did not provide any means of distinguishing amount awarded for mental anguish from that awarded for pain and suffering) (citing TEX. R. APP. P. 44.1(b) (reversal as to all matters in controversy required if non-reversible and reversible cannot be fairly separated)); *see also Heine*, 835 S.W.2d at 86 (reversing and remanding as to all unliquidated damages upon review of default proceeding even though not all of appellant's no-evidence challenges sustained); *Sharm, Inc. v. Martinez*, 900 S.W.2d 777, 784, 786 n.9 (Tex. App.—Corpus Christi–Edinburg 1995, no writ).

9

### 3. Physical Pain, Mental Anguish, and Physical Impairment

As to the remaining portions of the award, Garza argues that Rodgers presented no evidence of any noneconomic damages (though she does not specify any particular category of damages for which she claims Rodgers has no evidence). Rodgers responds that she presented sufficient evidence to support the following types of damages: (1) physical pain, (2) mental anguish, and (3) physical impairment. Again, the trial court's judgment did not identify any specific amounts awarded for any category of damages.

#### *Physical Pain*

Given the "inherent indeterminacy" of noneconomic damages such as pain and suffering, we must afford discretion to a jury's determinations of noneconomic awards so long as they are supported by the evidence. *See Gregory v. Chohan*, 670 S.W.3d 546, 557 (Tex. 2023) (plurality op.); *see also Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 829 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("Matters of pain and suffering are necessarily speculative, and it is within the province of the jury to set the amount of such damages."); *Wal-Mart Stores, Inc. v. Sholl*, 990 S.W.2d 412, 420 (Tex. App.—Corpus Christi–Edinburg 1999, pet. denied) (describing mental anguish, pain and suffering, and physical impairment and disfigurement as "the more amorphous, discretionary damages" best "left to the discretion of the trier of fact") (internal quotations omitted).

At the default judgment hearing, Rodgers testified that upon impact, she lost consciousness. She recalled waking up in the ambulance and feeling pain in her head and left side of her body. Rodgers testified that her head hit the pavement, and her helmet "cracked up the back." She suffered a large hematoma on the back of her head, though she did not crack her skull. Rodgers also testified that she suffered a broken pelvis, which caused radiating pain in her hip girdle area. At the time of the hearing, Rodgers stated that the area would still "kind of seize up" and cause her to "hunch over" if she did not focus on exercises to improve flexibility. She also described pain in her lower back and denied any prior back or pelvis problems pre-accident. Rodgers was essentially bedridden for two months before beginning physical therapy and water therapy in January 2020. She stated she was still in pain after the first two months. Her formal therapy continued until March 2020, when the COVID-19 pandemic began.

Even if we were to conclude that Rodgers's testimony is some evidence to support an award for pain and suffering, *see Reeves*, 748 S.W.2d at 305 (plaintiff's testimony as to pain suffered was "some evidence" to support trial court's award of $25,000 for pain and suffering), we cannot ascertain from the record or default judgment the amount the trial court awarded for such damages. We therefore remand for a new trial as to damages. *See Jackson*, 77 S.W.3d at 903–04.

*Mental Anguish*

To recover mental anguish damages, a party must present either "direct evidence of the nature, duration, or severity of a plaintiff's anguish, thus establishing a 'substantial disruption in the plaintiffs' daily routine,' or other evidence of a 'high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger." *Id.* at 903 (quoting *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)). Here, Rodgers did not present any such testimony. Though she testified that the first two months of her recovery "kind of made [her] crazy" and that she "was very anxious and very upset about it," she also testified that "[a]fter awhile, you just kind of lean into recovering" and "accept the fact that you are in bed." Rodgers's testimony does not demonstrate the nature, severity, duration, or degree of mental anguish she claims to have suffered. *See id.*; *see also Saenz*, 925 S.W.2d at 614 (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)).[4] To the extent the trial court awarded damages for mental anguish,[5] we reverse the award and remand for a new trial on damages. *See Jackson*, 77 S.W.3d at 903–04.

---

[4] Contrast these cases with *Carrell v. Richie*, 697 S.W.2d 43, 44–45 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (upholding award for mental pain and suffering where evidence described terror, fear, trepidation, humiliation, and embarrassment).

[5] The trial court's comments at the hearing suggest an intention to award damages for mental anguish:

### *Physical Impairment*

Lastly, we address the issue of any damages awarded for physical impairment. Physical impairment, also referred to as loss of enjoyment of life, "encompasses the loss of the injured party's former lifestyle." *Dawson v. Briggs*, 107 S.W.3d 739, 752 (Tex. App.—Fort Worth 2003, no pet.) (citing *Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 412 (Tex. App.—Houston [14th Dist.] 2001, pet. abated)). It is an element of damages beyond loss of earning capacity and beyond any pain and suffering, to the extent that it produces a separate loss that is "substantial or extremely disabling." *Id.* (citing *Dollison v. Hayes*, 79 S.W.3d 246, 253 (Tex. App.—Texarkana 2002, no pet.); *Blankenship v. Mirick*, 984 S.W.2d 771, 777 (Tex. App.—Waco 1999, pet. denied)).

At the default judgment hearing, Rodgers described how, as a result of the injuries sustained in the accident, she was confined to her bed except for trips to the bathroom with a walker. She testified that because she could not stand in the shower, she resorted to sponge baths. Rodgers explained that she needed to remain flat on

---

Okay. I think there is sufficient evidence to support a judgment on all of the elements of damages.

. . . .

. . . She has already discussed future pain. She has already discussed future impairment. She has already discussed past pain, past mental anguish, past physical impairment. I don't know an element you have missed.

13

her back during that initial two-month period because if she moved her pelvis and it dislocated, she would need surgery. During that time, Rodgers could not be present or active in the day-to-day management of her restaurant, as she had been previously. Further, in her written statement attached to her motion, Rodgers described how she has been unable to return to riding her bicycle on the street, a hobby that she enjoyed for twenty-five years prior to the accident.

Even if we determined, based on this testimony and evidence, that the evidence supports some award of damages for physical impairment, *see Machala*, 995 S.W.2d at 824–25 (upholding jury award for physical impairment where evidence indicated that as a result of fall plaintiff suffered fractured vertebrae, was hospitalized for two weeks, and was unable to perform most of daily activities she engaged in prior to fall and citing numerous cases reaching similar determination), we again must remand for a new trial on damages because the trial court's judgment fails to specify the amount of damages awarded for physical impairment (if any). *See Thomas v. Martinez*, 217 S.W.3d 680, 684–85 (Tex. App.—Dallas 2007, pet. stricken) (reversing damages awarded for physical impairment and pain and suffering and remanding for new trial on those aspects alone where record did not provide any means of distinguishing amounts awarded for each category).

## Venue

Garza also argues in her reply brief[6] that venue was improper in Harris County, Texas and that the proper venue was Chambers County, Texas. Assuming Garza's venue argument is properly before us, we first note that a defendant's objections to a plaintiff's choice of venue can be waived; similarly, "a defendant is free to consent or acquiesce to venue in a particular county." *Champion v. Estlow*, 456 S.W.3d 363, 365 (Tex. App.—Austin 2015, pet. denied) (citing TEX. R. CIV. P. 86(1)). In addition, Garza's restricted appeal does not challenge the trial court's default judgment against her on the basis of lack of notice, lack of personal jurisdiction, or some other defect in service. *See id.* at 365–66 (determining that appellant could not demonstrate venue error on face of record where appellant's argument required court to take judicial notice that location of action and defendant's address were in different county than that of suit; court noted that venue challenges may be waived and appellant did not challenge default judgment on basis of lack of notice, lack of personal jurisdiction, or other defect in service).

---

[6] We note that Garza raised the issue of venue in her reply brief, and the new argument does not appear to have been made in response to anything asserted in Rodgers's brief. *See* TEX. R. APP. P. 38.3 ("The appellant may file a reply brief *addressing any matter in the appellee's brief.*") (emphasis added). Accordingly, Garza has waived any challenge to improper venue. *See Fallon v. MD Anderson Phys. Network*, 586 S.W.3d 58, 73 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (holding appellant waived hearsay challenge to affidavit by raising it for first time in reply brief); *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court.").

We further conclude that there is no venue error apparent from the face of the record, as required to prevail in a restricted appeal. *See Lejeune*, 297 S.W.3d at 255. Garza contends that the following establishes improper venue: (1) the original petition's assertions that the cause of action accrued in Chambers County and the dog attack occurred on the defendants' property in Chambers County, and (2) the fact that the trial court's order authorizing substituted service on Till required that he be served in Chambers County.

Garza's arguments ignore the fact that the petition also asserted that Garza was a resident of Harris County—a fact she does not dispute.[7] Therefore, under Civil Practice and Remedies Code sections 15.002(a)(2) and 15.005, because venue was proper as to Garza in Harris County, venue was proper in Harris County as to all defendants, at least on the face of the record. *See* TEX. CIV. PRAC. & REM. CODE § 15.002(a)(2) (stating that one venue option is "the county of defendant's residence at the time the cause of action accrued if defendant is a natural person"); § 15.005 ("In a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences."). We conclude there is no venue error apparent from the face of the record, nor any basis

---

[7] The record reflects that Garza was personally served in Harris County.

for allowing Garza to raise such a challenge at this stage. *See Champion*, 456 S.W.3d at 366.

## Conclusion

We reverse the trial court's damages award because it fails to specify the type of damages it awarded, or the amounts (if any) awarded for any category of damages, i.e., medical expenses, mental anguish, pain and suffering, physical impairment, or lost wages, and we remand these damages issues for a new trial consistent with this opinion.[8]

Amparo Monique Guerra
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

---

[8] After sustaining at least two of Garza's points challenging the sufficiency of the evidence to support certain categories of damages, we would typically reverse and render judgment for Garza as to those claims. However, when an appellate court sustains a no-evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment—as is the case here—the appropriate disposition is to remand for a new trial on the issue of unliquidated damages. *Sharm, Inc. v. Martinez*, 900 S.W.2d 777, 786 n.9 (Tex. App.—Corpus Christi–Edinburg 1995, no writ) (citing *Holt Atherton Indus. v. Heine*, 835 S.W.2d 86 (Tex. 1992)).

17